**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OMON BRIDGET ISIRAMEN,

  Plaintiff-Appellant,

v.

YUMA REGIONAL MEDICAL
CENTER, an Arizona corporation,

  Defendant-Appellee.

No. 20-15695

D.C. No. 2:18-cv-02749-JAS

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Submitted March 1, 2021[**]
Phoenix, Arizona

Before: HAWKINS, BEA, and BUMATAY, Circuit Judges.

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]  The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Omon Isiramen ("Isiramen") appeals the grant of summary judgment to defendant Yuma Regional Medical Center in her Title VII action alleging disparate treatment, hostile work environment, and retaliation for filing an EEOC complaint. We affirm.

Although Isiramen is in a protected class, she presented no evidence that non-black employees with qualifications similar to her were treated more favorably. *Cordova v. State Farm*, 124 F.3d 1145, 1148 (9th Cir. 1997). She further failed to identify any similarly-situated individuals and provided only her own conclusory testimony that she was treated less favorably than other nurses. The district court correctly held that this was insufficient to carry her burden in creating a genuine issue of material fact as to disparate treatment. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

Nor did Isiramen demonstrate a material issue of fact on her claim that she was subjected to unwelcome conduct based on her race and that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. Isiramen's assertions that co-worker Stanfield's repeated complaints about her were racially motivated are speculative and unsupported, as each complaint was directed at specific work performance issues

and some were corroborated by other employees. Her only evidence of a racially-hostile atmosphere was (1) a racial statement anonymously written on a bathroom wall, which Isiramen did not personally see; and (2) a magazine article posted on a bulletin board in a nurse lunchroom about the history of the song "Dixieland," which was removed promptly after Isiramen complained about it. These isolated incidents are insufficient to show severe or pervasive harassment. *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003).

The district court did not err in denying Isiramen's claims of retaliation for making complaints against Stanfield and for filing an EEOC complaint. Her complaints against Stanfield do not assert racial discrimination and do not constitute protected activity. There was also nearly a year between these complaints and the corrective action, so the timing does not raise an inference of causation.

While Isiramen's filing of an EEOC complaint is a protected activity, she filed the complaint five days after she received the corrective action, so the corrective action could not have been in retaliation for the filing. This leaves only Isiramen's transfer to Tower 5 as a potential adverse employment action. Although a lateral transfer may in some instances qualify as a retaliatory action if it is dictated by the employer, *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000), here Isiramen

3

requested the transfer herself, citing patient safety concerns.  As the district court held, there is no case law supporting the assertion that a voluntary transfer made at her request can qualify as a retaliatory adverse action.  *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994).

**AFFIRMED.**